UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
                                                  :

KEVIN P. DOWNEY,                    :

                Plaintiff,         :            16-CV-1689 (JMF)

                              :

        -v-                   :       OPINION AND ORDER

                              :

ADLOOX INC., et al.,            :

                              :

              Defendants.      :

                              :

-----------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #:_____
DATE FILED:  02/28/2017____

JESSE M. FURMAN, United States District Judge:

       In September 2015, Plaintiff Kevin Downey was hired by Defendant Adloox Inc. — an advertising technology company — as Vice President of Sales in its newly opened New York City office.  Adloox Inc. ("Adloox U.S.") is the United States-based, wholly owned subsidiary of Adloox ("Adloox France"), a French corporation (collectively, "Defendants").  Less than two months after hiring Downey, Adloox U.S. terminated his employment.  Downey, who was fifty-one at the time of his termination, now sues Adloox U.S. and Adloox France, alleging age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.  He also brings claims under New York law for fraudulent inducement and unjust enrichment.  Defendants now move, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint (the "Complaint") in its entirety.  (Docket No. 27).[1]  For the reasons that follow, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

---

[1]      On February 24, 2017, Downey filed a Motion for Leave To File a Third Amended Complaint, primarily to add another plaintiff.  (Docket Nos. 37-38).  This Opinion and Order

## BACKGROUND

The relevant facts, taken from the Complaint and assumed to be true for purposes of this motion, can be stated briefly.  *See, e.g.*, *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011). Downey, now fifty-two years old, has worked as a sales professional in the advertising technology industry since 1996.  (Docket No. 26 ("Sec. Compl.") ¶¶ 11-12, 26).  In July 2015, executives from Adloox France (who, at some point, became executives of Adloox U.S. as well) traveled from Paris, France, to New York City to interview Downey for the position of Vice President of Sales North America.  (*Id.* ¶¶ 16, 21, 27).  At the time, Adloox France had no subsidiaries or representatives in the United States, but it was looking to establish a presence. (*Id.* ¶¶ 16, 21).  As part of the hiring process, Adloox France asked Downey to prepare a presentation on how the company could enter the United States market and achieve a certain level of sales.  (*Id.* ¶ 27).  On July 29, 2015, Downey received a preliminary offer of employment.  (*Id.* ¶ 28).  As a condition of employment, however, Adloox executives advised Downey that he would first need to free himself from a non-compete agreement with his former employer.  (*Id.* ¶¶ 29-30).  Downey brought suit in New York State Supreme Court against his former employer, which resulted in the non-compete restrictions being declared unlawful.  (*Id.* ¶ 31).  He expended $40,000 of his own money in doing so.  (*Id.*).

Once the non-compete issue was resolved, Downey began working for Adloox U.S. pursuant to an executed employment agreement.  (*Id.* ¶ 32).  Starting on September 7, 2015, he spent a few days training in Adloox's London office and then returned to the Adloox U.S. office in New York City, where his work included networking with industry contacts, selling Adloox services to potential customers, and interviewing potential sales associates for the New York office.  (*Id.* ¶¶ 32-33).  Downey reported directly to supervisors from Adloox France, as he was

---

does not address the motion for leave to amend and treats the Second Amended Complaint as the operative complaint for present purposes.

the sole Adloox U.S. employee at the time and Adloox U.S. and Adloox France were both managed by the same people acting as Chief Executive Officer, Chief Financial Officer, and Chief Operating Officer.  (*Id.* ¶¶ 22-23).  In late October 2015, Downey spent time preparing the company for a major marketing exhibition in New York.  (*Id.* ¶ 38).  On October 29, 2015, Downey turned over his list of business contacts at the request of the CEO (*id.* ¶ 39); the next day, Downey was fired via an email sent from the CFO in Paris.  (*Id.* ¶ 40).

Downey alleges that, during the course of his employment, his supervisors repeatedly referred to him as the "old timer."  (*Id.* ¶ 34).  Additionally, while Downey was interviewing potential sales staff for Adloox U.S., company executives sent emails indicating a desire to employ only "young sharks" and instructing the company's recruiter to "target candidates aged ideally around 30 (35 big max)."  (*Id.* ¶¶ 35-36).  At one point, Downey recommended a candidate over the age of thirty-five, but an Adloox executive responded: "Too old/senior. We're looking for young sharks."  (*Id.* ¶ 37).  After Downey was terminated, his position was filled by a thirty-one year old.  (*Id.* ¶ 42).  On March 4, 2016, Downey filed the instant action. (Docket No. 1).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action."  *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).  The plaintiff need not prove discrimination, or even allege facts establishing every element of a *prima facie* case of discrimination, but he "must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality."  *Id.* at 32 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310-11 (2d Cir. 2015)).  More

specifically, the plaintiff "must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" *Id.* (citing *Vega*, 801 F.3d at 84).[2]

## DISCUSSION

As noted, Downey alleges age discrimination under the ADEA, NYSHRL, and NYCHRL as well as state law claims for fraudulent inducement and unjust enrichment.  The Court will address the ADEA claim first, then turn to the remaining claims.

### A.  The ADEA Claim

Wisely, Defendants do not dispute that the allegations in the Complaint are sufficient to raise an inference of age discrimination.  Given, among other things, evidence that supervisors repeatedly called Downey the "old timer," that executives explicitly advocated for hiring "young sharks" and rejected at least one candidate as "[t]oo old/senior," and that Adloox U.S. replaced Downey with a thirty-one year old, the allegations are plainly sufficient to give "'plausible support to a minimal inference' of the requisite discriminatory causality." *Marcus*, 661 F. App'x at 32 (quoting *Littlejohn*, 795 F.3d at 310-11).  Instead, Defendants make two arguments for dismissal of Downey's ADEA claim.  First, they contend that Downey's claim is barred — at least with respect to Adloox France — by Section 623(h)(2) of the Act, which provides that the statute "shall not apply where the employer is a foreign person not controlled by an American employer."  29 U.S.C. § 623(h)(2); *see also id.* § 630(a) (defining "person" to include "corporations" and similar entities).  (Docket No. 28 ("Defs.' Mem."), at 10-11; Docket No. 36 ("Defs.' Reply"), at 6-8).  Second, they assert that Adloox U.S. is not an "employer" under the

---

[2]      Defendants also move to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (Docket No. 28 ("Defs.' Mem."), at 12).  But Rule 12(b)(1) is not relevant here because, as discussed below, Defendants' arguments are almost certainly not jurisdictional.  In any event, the result would be same whichever subsection of Rule 12 applies.

ADEA because it did not have "twenty or more employees" for each working day in each of twenty or more calendar weeks in the preceding or current calendar year." 29 U.S.C. § 630(b). (Defs.' Mem. 6-10; Defs.' Reply 1-6). The Court will address each argument in turn.

Defendants' argument that Downey's ADEA claim is barred — at least with respect to Adloox France — by Section 623(h)(2) is not without force given the plain language of the statute and Downey's own allegation that Adloox France "completely controls the business of" Adloox U.S., his direct employer. (Am. Compl. ¶ 19). The problem with the argument, however, is that it runs contrary to binding Second Circuit precedent. *See Morelli v. Cedel*, 141 F.3d 39 (2d Cir. 1998). In *Morelli*, the plaintiff brought an ADEA claim against a Luxembourg bank, which had hired her to work in its New York branch office. *See id.* at 41. The Court acknowledged that "an absolutely literal reading of § [623(h)(2)] might suggest that the ADEA . . . does not apply to the *domestic* operations of foreign employers — unless there is an American employer behind the scenes." *Id.* at 42. "But," the Court continued, "the plain language of § [623(h)(2)] is not necessarily decisive if it is inconsistent with Congress' clearly expressed legislative purpose." *Id.* Based on a review of the legislative "context" in which the statute was added, the Court concluded that "Congress's purpose was not to exempt the domestic workplaces of foreign employers from the ADEA's prohibition of age discrimination. Instead, the purpose of adding this exclusion was to limit the reach of an extraterritorial amendment adopted as part of the same legislation." *Id.*[3]

---

[3]      The *Morelli* Court seemed to treat the question of whether Section 623(h)(2) barred suit as a jurisdictional issue. *See* 141 F.3d at 41. In light of subsequent Supreme Court jurisprudence, including *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010), and *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (noting that the Court has "tried in recent cases to bring some discipline to the use of the term jurisdiction" (internal quotation marks omitted)), the issue is almost certainly a merits one, not a jurisdictional one. *See, e.g.*, *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 869 (7th Cir. 2011) (holding that "[a]n employee's status as a foreign worker may prevent her success on the merits in a Title VII or ADEA case, but it is not a barrier to the court's power to adjudicate her case," because that issue

As the Court explained, Section 623(h)(2) was not part of the original ADEA.  *Id.*
Instead, it was added in 1984 in response to several court of appeals decisions holding that "the
ADEA did not apply to 'Americans employed outside the United States by American
employers.'"  *Id.* (quoting *Cleary v. United States Lines, Inc.*, 728 F.2d 607, 610 (3d Cir. 1984)).
The 1984 amendments expanded the ADEA's definition of "employee" to include "'any
individual who is a citizen of the United States employed by an employer in a workplace in a
foreign country.'"  *Id.* (quoting Pub. L. No. 98-459, § 802(a) (1984)).  That revision, the Court
explained, "was intended 'to assure that the provisions of the ADEA would be applicable to any
citizen of the United States who is employed by an American employer in a workplace outside
the United States.'"  *Id.* at 42-43 (quoting S. Rep. 98-467 ("S. Rep."), at 27 (1984), *reprinted in*
1984 U.S.C.C.A.N. 2974, 3000).  "The other 1984 amendments," including the addition of
Section 623(h)(2), "conform the ADEA's reach to 'the well-established principle of sovereignty,
that no nation has the right to impose its labor standards on another country.'"  *Id.* at 43 (quoting
S. Rep. at 27).  "Thus," the Court concluded, Section 623(h)(2) "of the ADEA merely limits the
scope of the amended definition of employee, so that an employee at a workplace in a foreign
country is not protected under the ADEA if the employer is a foreign person not controlled by an
American employer.  There is no evidence in the legislative history that these amendments were
intended to restrict the application of the ADEA with respect to the *domestic* operations of
foreign employers."  *Id.* (citation omitted).

The Court cited several other considerations in support of its conclusion that Section
623(h)(2) did not bar the plaintiff's ADEA claim.  First, "the plain language of the corresponding
foreign-employer exclusions in Title VII of the Civil Rights Act of 1964 and the Americans with
Disabilities Act of 1990 indicates that a foreign employer's domestic operations are not excluded

---

"goes to the merits of a claim rather than the court's subject matter jurisdiction").  But the
distinction is immaterial here.

from the reach of those statutes." *Id.* at 43 (citations omitted).  "It is not apparent," the Court

reasoned, "why the domestic operations of foreign companies should be subject to Title VII and

the ADA, but not to the ADEA." *Id.*  Second, the ADEA "is remedial and humanitarian

legislation" and "should be construed liberally to achieve its purpose of protecting older

employees from discrimination." *Id.* (internal quotation marks omitted).  An "exemption" for

"the domestic operations of foreign employers," the Court concluded, "would only undermine

the purpose of the ADEA to 'promote employment of older persons based on their ability rather

than age.'" *Id.* (quoting 29 U.S.C. § 621(b)).  Third, applying the ADEA to "foreign enterprises'

U.S. branches" is consistent with the proposition that foreign corporations operating in the

United States are entitled to "no more than equal treatment with domestic corporations." *Id.*

(internal quotation marks omitted).  As the Court observed: "U.S. subsidiaries of foreign

corporations are generally subject to U.S. antidiscrimination laws, and, absent treaty protection

. . . [,] a U.S. branch of a foreign corporation is not entitled to an immunity not enjoyed by such

subsidiaries." *Id.* at 44 (citation omitted).  And finally, the Court found confirmation of its

analysis in the position of the Equal Employment and Opportunity Commission ("EEOC") —

"the agency charged with the enforcement of the ADEA" — that the "the law generally applies

'to foreign firms operating on U.S. soil.'" *Id.* (quoting E.E.O.C. Policy Guidance, N-915.039,

Empl. Prac. Guide (CCH) 5183, 6531 (March 3, 1989)).

 On its face, *Morelli* would seem to stand for the proposition that Section 623(h)(2) is

concerned only with the reach of the ADEA's extraterritorial application and has no application

to the circumstances here, involving a domestic company wholly owned by a foreign entity.

Notably, that reading has been adopted by several district courts, including some in this Circuit.

*See, e.g.*, *Ingenito v. Riri USA, Inc.*, No. 11-CV-2569 (MKB), 2013 WL 752201, at *6 (E.D.N.Y.

Feb. 27, 2013) ("While the Second Circuit has not specifically applied the single employer

doctrine in cases where the parent is a foreign corporation, in *Morelli v. Cedel*, the Second

Circuit made clear that the United States branch of a foreign corporation would be liable for violations under Title VII and other antidiscrimination statutes."); *Pina v. Henkel Corp.*, No. 07-CV-4048 (JRP), 2008 WL 819901, at *8 (E.D. Pa. Mar. 26, 2008) ("Plaintiff does not allege that [the foreign defendant] is controlled by any American corporation . . . . Both the United States Court of Appeals for the Second Circuit and the United States District Court for the Southern District of Florida have found, based on [EEOC] policy guidance and rules of statutory interpretation, that a foreign company may be liable under the ADEA for discrimination against employees on U.S. soil. We agree with the analyses in these cases and, thus, deny [the defendant's] motion insofar as it seeks dismissal of the ADEA retaliation claim against it because it is a foreign corporation." (citations omitted)); *Sabol v. Cable & Wireless PLC*, 361 F. Supp. 2d 205, 208 n.2 (S.D.N.Y. 2005) ("Finding that C & W PLC, a United Kingdom corporation, was the [p]laintiff's true employer would not require his claim to then be dismissed under 29 U.S.C. § 623(h)(2). This section does not exclude from the protections of the ADEA Americans working in the United States for a foreign corporation."); *Bass v. Technip USA Corp.*, No. 05-CV-0652 (STL), 2005 WL 1185626, at *1 (S.D. Tex. May 6, 2005) (finding *Morelli*'s reasoning "persuasive" and "apply[ing] the *Morelli* court's construction of § 623(h)(2) that the ADEA reaches the domestic operations of foreign employers" where the plaintiff worked for a wholly owned subsidiary of a foreign corporation but alleged an "integrated enterprise" theory of liability).[4]

---

[4]     As in *Morelli*, that conclusion is further reinforced by reference to the policy guidance of the EEOC. That guidance does not explicitly address the circumstances presented here, but it makes plain the EEOC's view that Section 623(h)(2) was intended only to limit the scope of the amended definition of employee to exclude certain employees at workplaces in foreign countries, not employees at workplaces within the United States. *See* E.E.O.C., N-915.039, *Policy Guidance: Application of the Age Discrimination in Employment Act of 1967 and the Equal Pay Act of 1963 to America Firms Overseas, Their Overseas Subsidiaries, and Foreign Firms* (1989) ("Both citizens and aliens working in the United States are generally protected by the ADEA . . . . Example: Arthur, a 55-year-old resident alien of the U.S., works for a foreign corporation operating in Ohio. Arthur files a charge with the Commission because his foreign employer has

Adloox argues that *Morelli* is distinguishable, however, because it involved a "branch office" of a foreign company, whereas Downey was directly employed by a wholly owned domestic subsidiary of the foreign company.  (*See* Defs.' Reply 7-8).  Admittedly, that argument does find some support in the language of several district court opinions.  *See, e.g.*, *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02-CV-7955 (DLC), 2003 WL 21146667, at *2 (S.D.N.Y. May 14, 2003); *see also, e.g.*, *Celmer v. Livingston Int'l, Inc.*, No. 12-CV-539 (RJA), 2013 WL 951530, at *5 (W.D.N.Y. Mar. 12, 2013); *cf. Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 394-96 (S.D.N.Y. 2002).  In *Haugh*, for example, the plaintiff was — like Downey — employed by a wholly owned U.S. subsidiary of a foreign company.  The Court held that the plaintiff could not take advantage of *Morelli* by relying on the "single employer doctrine" to argue that the parent and subsidiary should be treated as the same entity.  *See* 2003 WL 2114667, at *2.  "The single employer doctrine," the Court reasoned, "cannot . . . overcome the bar presented by the unambiguous language of Section 623(h)(2)."  *Id.*  The Court conceded that "the holding in *Morelli* would permit a different conclusion."  *Id.* (citing *Morelli*, 141 F.3d at 44).  But, the Court continued, "the *Morelli* court did not have to confront the issue presented here: whether the single employer doctrine can trump unambiguous statutory language.  In *Morelli*, the plaintiff's direct employer was a foreign corporation.  Here, it is undisputed that the plaintiff's direct employer is . . . an American corporation."  *Id.*

In the Court's view, this reasoning is unpersuasive.  If the single-employer doctrine applies in the case of a domestic subsidiary and a foreign parent, then the domestic employee of a wholly owned U.S. subsidiary is treated, constructively at least, as if he were the employee of the foreign parent — in which case, the situation is indistinguishable from the one in *Morelli*.  Any doubt on that score is resolved by the Second Circuit's decision in *Brown v. Daikin America*

---

a firm policy requiring all persons over 56 to retire.  Arthur should obtain relief since the ADEA generally covers the employment practices of a foreign employer inside the United States.").

*Inc.*, 756 F.3d 219 (2d Cir. 2014), which post-dated *Haugh* and the other decisions upon which Defendants rely.  In *Brown*, the plaintiff brought Title VII claims against a Japanese company ("DIL") and its wholly owned U.S. subsidiary ("Daikin America").  *See id.* at 222-23.  Although the plaintiff acknowledged that Daikin America was his "direct employer," the Second Circuit held that he could bring claims against DIL as well because he sufficiently alleged that the two "constitute[d] a 'single integrated enterprise.'"  *Id.* at 226.  "[A]t this early stage in the litigation," the Court reasoned, "the control that Brown alleged DIL to have exercised over Daikin America's employment actions — lying at the core of Brown's charges of discrimination — is adequate to sustain the action against DIL."  *Id.* at 228; *see also, e.g.*, *Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 608-09 (S.D.N.Y. 2016) (evaluating the plaintiff's claim that a foreign firm and its wholly owned American subsidiary — the plaintiff's direct employer — were "functionally a 'single employer'" by applying the Second Circuit's four-part control test for purposes of the foreign firm's liability under Title VII and the ADA).

Admittedly, *Brown* involved Title VII, while this case involves the ADEA.  But, as noted above, the *Morelli* Court emphasized that Title VII and the ADEA should be understood to have a similar substantive reach.  *See* 141 F.3d at 43; *see also, e.g.*, *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357 (1995) ("The substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title VII.").  And, regardless, *Brown* teaches — contrary to *Haugh* and the other cases upon which Defendants here rely — that a plaintiff in Downey's position can rely on the single-employer doctrine to establish the existence of an employee-employer relationship with the foreign parent of his immediate employer.  If a plaintiff is able to do so, then *Morelli* stands for the proposition that Section 623(h)(2) poses no bar to bringing an ADEA claim against the foreign employer.

On this view, the viability of Downey's ADEA claim against Adloox France does not turn on Section 623(h)(2), but rather, as in *Brown*, on whether Adloox France can be treated as

his employer pursuant to the single-employer doctrine.  That depends on a fact-intensive inquiry

into whether there is "evidence of (1) interrelation of operations, (2) centralized control of labor

relations, (3) common management, and (4) common ownership or financial control."  *See*

*Brown*, 756 F.3d at 226 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir.

1995)).  Significantly, the Second Circuit has cautioned that "[w]hether two related entities are

sufficiently integrated to be treated as a single employer is generally a question of fact not

suitable to resolution on a motion to dismiss."  *Id.*; *accord Salemi v. Boccador, Inc.*, No. 02-CV-

6648 (GEL), 2004 WL 943869, at *4 (S.D.N.Y. Apr. 29, 2004) (Lynch, J.); *Dias v. Cmty. Action

Project*, No. 07-CV-5163 (NGG) (RER), 2009 WL 595601, at *5 (E.D.N.Y. Mar. 6, 2009).  To

survive a motion to dismiss, therefore, a plaintiff need only allege facts "sufficient to put [the

defendant] on notice of the theory of employer liability upon which her claims are based."

*Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009).  Downey plainly

does so here (*see* Am. Compl. ¶¶ 22-23), and Adloox's arguments to the contrary (for example,

that certain executives do not qualify as "employees" (Defs.' Reply 5)) turn on facts outside the

Complaint.  Under *Morelli* and *Brown*, therefore, Downey's allegations are sufficient — at least

at this stage of the litigation — to sustain his ADEA claim against Adloox France.

Defendants' second argument for dismissal of Downey's ADEA claim — that Adloox

U.S. does not have enough employees to qualify as an "employer" within the meaning of the

statute (Defs.' Mem. 6-10; Defs.' Reply 1-6) — is more easily rejected.  For one thing, the

twenty-employee minimum is an element of a claim under the ADEA, not a jurisdictional issue.

*See Newsom-Lang v. Warren Intern.*, 129 F. Supp. 2d 662, 664-65 (S.D.N.Y. 2001) (relying on

*Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 365-66 (2d Cir. 2000), which held the same for

Title VII's fifteen-employee minimum).  To survive a motion to dismiss, therefore, a plaintiff

need only plead that the defendant has at least twenty employees, which Downey does here.

(Am. Compl. ¶ 10).  Second, as discussed above, Downey has alleged more than enough to rely,

at least at the pleading stage, on the single-employer doctrine, pursuant to which Adloox France's employees would count and put Adloox U.S. over the twenty-employee threshold. *See Morelli*, 141 F.3d at 45 (holding that, "[i]n determining whether [a defendant] satisfies the ADEA's 20-employee threshold, employees cannot be ignored merely because they work overseas."); *see also, e.g.*, *Dias*, 2009 WL 595601, at *4-5 (rejecting a motion to dismiss because the plaintiff's complaint alleged that the defendant's personnel had been "involved in the process leading to her termination and were ultimately responsible for that decision" and that the defendant's executives had "administer[ed] control" via "hiring, training, and compensation"). Accordingly, Defendants' motion to dismiss Downey's ADEA claims is DENIED.

**B.  The NYSHRL and NYCHRL Claims**

Defendants' primary argument with respect to Downey's NYSHRL and NYCHRL claims — that Adloox U.S. does not meet the employee-threshold requirements for coverage under those laws, *see* N.Y. Exec. Law § 292(5); N.Y.C. Admin. Code § 8-102[5] (Defs.' Mem. 12-13; Defs.' Reply 8) — fails for the same reasons.  *See, e.g.*, *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 156 (2d Cir. 2014) ("Our case law instructs us to apply the same four-factor inquiry to determine whether two or more entities constitute a 'single employer' under the New York Human Rights Law.").  Separately, Defendants contend that the claims must be dismissed because Downey is a Connecticut resident and the discriminatory acts did not take place in New York.  (Defs.' Mem. 13-14; Defs.' Reply 8-9).  That argument, however, depends on facts outside of the Complaint — most notably, on where Downey was when he received the termination email — and thus is premature.  In any event, to establish claims under the NYSHRL and the NYCHRL, a plaintiff need only "plead and prove that the alleged discriminatory conduct had an impact within" New York State and New York City.  *Hoffman v. Parade Publs.*, 15 N.Y.3d 285, 290 (N.Y. 2010).  Downey does so, as his claims are based in part on his treatment during his employment and he alleges, among other things, that he worked at least part-time out

of the Adloox New York office, including scheduling and preparing for a major marketing exhibition in New York.  (*See* Am. Compl. ¶¶ 21, 33, 38-39, 60, 69).  Accordingly, Defendants' motion to dismiss Downey's NYSHRL and NYCHRL claims is DENIED.  *Cf. Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societe Per Azioni*, 549 F. Supp. 2d 549, 554 (S.D.N.Y. 2008) (allowing NYSHRL and NYCHRL claims to survive a motion to dismiss where the plaintiff lived and worked in Minnesota but was terminated on a work trip to New York City).

## C. The Fraudulent Inducement Claim

By contrast, Downey's fraudulent inducement claim fails as a matter of law.  As a general matter, an at-will employee — which is what Downey was — may not "evade the bar against suing for wrongful termination by suing in tort."  *Jelks v. Citibank N.A.*, No. 99-CV-2955 (JSM), 2001 WL 50891, at *3 (S.D.N.Y. Jan. 22, 2001).  "Under very limited circumstances, however, at-will employees can recover for fraudulent statements that induce them into accepting positions of employment by showing: (1) a material false representation; (2) scienter; (3) reasonable reliance; (4) damages; and . . . (5) that the fraudulent misrepresentation was collateral or extraneous to the employment agreement."  *Id.*  To be cognizable, though, the false representation must be one "of present fact" rather than a future promise, not only because breach of a future promise sounds in contract, *see Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992), but also because reliance on a future promise of employment by an at-will employee is unreasonable as a matter of law, *see Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06-CV-5474 (JGK), 2008 WL 857492, at *16 (S.D.N.Y. Mar. 31, 2008).  Additionally, pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, "[t]he circumstances constituting fraud or mistake" must be "state[d] with particularity," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Burton v. Iyogi, Inc.*, No. 13-CV-6926 (DAB), 2015 WL 4385665, at *6 (S.D.N.Y. Mar. 16, 2015).

Applying those standards here, Downey's claim must be dismissed.  Downey alleges that he relied on Adloox U.S.'s promise of employment, but there is no suggestion that that promise was false, let alone false when it was made, given that Adloox U.S. *did* subsequently employ Downey.  Downey does not allege, and certainly does not allege with the particularity required by Rule 9(b), any false representation by Adloox U.S. with respect to the duration or nature of his employment.  *See, e.g.*, *Jelks*, 2001 WL 50891, at *4 (dismissing a fraudulent inducement claim on the ground that the plaintiff had not been "promised employment for any specific period of time"); *cf. Stewart*, 976 F.3d at 89-90 (holding that the plaintiff stated a claim for fraudulent inducement where she alleged that the defendants induced her to leave her former job by falsely representing that they had recently secured a large environmental client and that she would head a new environmental law department); *Hyman v. Int'l Bus. Machines Corp.*, No. 98-CV-1371 (JSM), 2000 WL 1538161, at *2-3 (S.D.N.Y. Oct. 17, 2000) (denying summary judgment with respect to a fraudulent inducement claim where the plaintiffs alleged that they had been induced to leave their former employer by false representations of a five-year contract).  In any event, any such promise would not be actionable because "claims of fraudulent inducement based on future promises of continued employment in an at-will employment context are not cognizable" under New York law.  *Deluca*, 2008 WL 857492, at *16.  Moreover, any reliance by Downey on such a promise was unreasonable as a matter of law.  *See id.*; *Jelks*, 2001 WL 50891, at *3.

## D.  The Unjust Enrichment Claim

Finally, Downey's unjust enrichment claim must also be dismissed.  To state a claim for unjust enrichment under New York law, a plaintiff must show: (1) the defendant was enriched (2) at the plaintiff's expense and (3) equity and good conscience require restitution.  *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).  It is one of the "well-settled principles of New York law" that "the existence of a valid and enforceable written contract governing a particular

14

subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004) (internal quotation marks omitted).  Unjust enrichment may be pleaded in the alternative, but only where there is "a bona fide dispute as to whether a relevant contract exists or covers the disputed issue." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (citing cases).  Here, there is no such dispute.  Downey indisputably had an at-will employment contract with Adloox U.S., and he makes no claim that it was invalid.  *Cf. Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458-59 (S.D.N.Y. 2016) (upholding an unjust enrichment claim where the defendant held money pursuant to a contract provision that the plaintiff alleged to be unlawful). Accordingly, he is barred from bringing a quasi-contract claim.

In arguing otherwise, Downey asserts that his claim "is based on" Defendants' "appropriation" of his "marketing/sales blueprint for the US market, and list of business contacts, both which [he] developed separate from his employment at Adloox."  (Docket No. 33 ("Pl.'s Opp'n"), at 19).  But Downey fails to cite any authority that would support an unjust enrichment claim of that sort.  More fundamentally, whether or not Downey "developed" his "marketing/sales blueprint for the US market, and list of business contacts" outside of his employment, he *provided* them to Defendants in connection with his employment (and his efforts to secure such employment).  It follows that any claim he has relates to the compensation and benefits that he received in exchange for what he provided as part of his employment.  Any such claim, however, would have to be based on the terms of the parties' contract (and Downey alleges no breach here); it may not be brought as a quasi-contract claim.  *See, e.g.*, *Jia Chen v. Antl Commc'ns, LLC*, No. 14-CV-6629 (SJF), 2015 WL 5793404, at *6 (E.D.N.Y. Sept. 30, 2015) ("In essence, [the unjust enrichment claim] seek[s] enforcement of [the defendant's] promises regarding compensation and benefits, which are governed by the [employment agreement].").  To be clear, none of that is to say that Defendants treated Downey honorably;

Downey's allegations suggest that Adloox U.S. and Adloox France may well have taken advantage of him to secure his ideas about how to enter the U.S. market and his list of business contacts.  Downey's sole protection against such treatment, however, was in his contract, and it behooved him — before sharing his ideas or handing over anything of value that he had "developed" — to bargain for more in return, such as a guarantee of employment for some term or increased compensation.  He is entitled to the benefit of his bargain, but the law of unjust enrichment does not entitle him to more.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Second Amended Complaint is GRANTED in part and DENIED in part.  Specifically, Downey's age discrimination claims under the ADEA, NYSHRL, and NYCHRL survive, while his New York state law claims for fraudulent inducement and unjust enrichment must be and are dismissed.

Unless and until the Court orders otherwise, Defendants shall file an answer with respect to the surviving claims **within three weeks of this Opinion and Order**.  The parties, however, shall appear for a conference with the Court on **March 6, 2017**, at **3:45 p.m.**, to discuss the Downey's pending motion for leave to amend the Complaint and the relationships between and among that motion, this Opinion and Order, and Defendants' deadline to answer.  In advance of the conference, counsel should confer to discuss those issues, including whether discovery should begin in connection with Downey's surviving claims.

The Clerk of Court is directed to terminate Docket No. 27.

SO ORDERED.

Dated: February 28, 2017
        New York, New York

_____
JESSE M. FURMAN
United States District Judge

16