UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                    :

KEVIN P. DOWNEY & ANDREA BONNER,     :

                       :

                 Plaintiffs,        :           16-CV-1689 (JMF)

                       :

                 v.            :        OPINION AND ORDER

                       :

ADLOOX INC. AND ADLOOX,            :

                       :

                 Defendants.     :

                       :
-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiffs Kevin P. Downey and Andrea Bonner bring claims against their former

employer, Adloox, Inc., and its French parent company, Adloox S.A.[1] (together, "Adloox" or

"Defendant"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et

seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.  (Docket No. 43).

Specifically, Plaintiffs claim that Adloox hired them, exploited them for their industry contacts,

and then fired them in favor of younger candidates.  Adloox now moves, pursuant to Rule 56 of

the Federal Rules of Civil Procedure, for summary judgment on all claims.  (Docket No. 88).

For the reasons that follow, Adloox's motion is GRANTED with respect to Plaintiffs' ADEA

and NYSHRL claims, and the Court declines to exercise supplemental jurisdiction over — and

thus dismisses without prejudice — Plaintiffs' NYCHRL claims.

---

[1]      The caption of the operative complaint erroneously names "Adloox" as the French parent
company rather than "Adloox S.A."  (*See* Rule 56.1 Reply 1 n.1).

## BACKGROUND

The following relevant facts, taken from the Third Amended Complaint, (Docket No. 43 ("TAC")), and the admissible materials submitted by the parties in connection with the motion for summary judgment, are either undisputed or described in the light most favorable to Plaintiffs. *See Simon v. City of New York*, 893 F.3d 83, 91 (2d Cir. 2018).

### A. Kevin Downey

Downey has worked as a sales professional in the fields of online advertising and advertising technology since 1996. (TAC ¶ 15). In July 2015, executives from Adloox interviewed Downey for the position of "Vice President, North America," an executive sales role. (TAC ¶¶ 28, 30, 34; Docket No. 111 ("Rule 56.1 Reply") ¶¶ 3, 15). As part of the hiring process, Downey was asked to prepare a presentation with respect to how the company could enter the U.S. market and achieve a certain level of sales. (TAC ¶¶ 34-35). His presentation impressed the three Adloox executives who interviewed him — Marco Ricci, Romain Bellion, and Antony Dufoi — and, in late July 2015, the three men gave Downey a preliminary offer of employment. (Rule 56.1 Reply ¶¶ 15, 28-29; TAC ¶ 35). He was fifty-one years old at the time. (TAC ¶ 5).

Downey started working at Adloox in September 2015. (TAC ¶ 39). After a week of training in London, Downey returned to New York, where he began reaching out to his professional network to arrange sales meetings and tests of Adloox's product. (*Id.* ¶ 34). In addition, he participated in the hiring process for sales associates who would fill out the Adloox team in New York. (*Id.* ¶ 43; Rule 56.1 Reply ¶ 140). During that process, Dufoi — Adloox's Chief Financial Officer and one of the executives involved in the recruitment process — wrote in an e-mail to a headhunter that "we need young sharks," and asked him to target candidates "aged ideally around 30 (35 big max)." (Docket No. 92 ("Roth Decl.") Ex. 9, at 8). Downey was

copied on the e-mail. (*Id.* at 7). Later that month, Dufoi told Downey that one of the job candidates was "[t]oo old/senior" and reiterated that Adloox was "looking for young sharks." (Docket No. 100 ("Downey Decl.") Ex. 6, at 1).

Around the same time, Adloox executives — particularly Ricci, the Chief Executive Officer — began to evince concern about Downey's sales performance. For example, on September 24, 2015, Ricci e-mailed Dufoi and Bellion, Adloox's other cofounder and the third company-wide executive, about Downey, stating that they "[j]ust need to start seeing some tests coming in." (Docket No. 90 ("Ricci Decl.") Ex. 17, at 1). A few weeks later, Ricci e-mailed Dufoi and Bellion, stating that if Downey did not get "3-5 tests live before Ad Tech New York" — a reference to "ad:tech," a digital advertising and technology conference scheduled for early November 2015, (Rule 56.1 Reply ¶ 81) — it would be "very disappointing, at his salary (+ network level)." (Ricci Decl. Ex. 19, at 3-4). Later in the same e-mail thread, Ricci stated that he was "still waiting for [Downey] to win a test (go live)" and that Downey did "almost all meetings from the phone (from home)" rather than going into New York City. (*Id.* at 1-2; *see id.* Ex. 20, at 1). Ricci ended bluntly: "Not good enough." (*Id.* Ex. 19, at 1).

The following week, Ricci told Downey that the "main objective for the moment" was to have "3+ tests live and running at decent volume before adtech," and suggested that Downey spend "more full days in [New York City]" rather than working from home in Connecticut. (*Id.* Ex. 26). In an exchange with Dufoi and Bellion the following day, Ricci wrote: "I think [Downey] now knows that if 3 tests aren't live" by the ad:tech conference in early November, "[i]t could be the end." (*Id.* Ex. 28). Three days later — on October 26, 2015 — Ricci sent an e-mail with the subject line "Kevin," declaring that Downey's "lack of energy and speed is starting to frustrate me" and stating that "if we did not have AdTech New York, I would fire him today."

(*Id.* Ex. 21, at 2).  By the following day, the three executives were discussing the mechanics of firing Downey.  (*Id.* Ex. 29, at 1-2).

On Thursday, October 29, 2015, Ricci asked Downey to submit a list of his business contacts for distribution of a newsletter that Adloox was sending out in advance of the ad:tech conference.  (TAC ¶ 46; Ricci Decl. Exs. 35-40).  Later the same day, Downey complied with the request and turned over his list.  (TAC ¶ 46).  That very day, Ricci e-mailed Dufoi and Bellion about Downey, referring to "things not working out" with Downey and concluding "we know it's the right decision."  (Ricci Decl. Ex. 34, at 2).  The following morning — less than two months after he had begun working at Adloox and only one day after he turned over his "coveted list of business contacts" — Downey received an e-mail from Dufoi informing him that he had been fired.  (TAC ¶¶ 5, 46-47; Rule 56.1 Reply ¶ 106).  Shortly thereafter, Adloox retained two consultants to obtain clients and generate revenue in the United States.  (Ricci Decl. ¶ 71).  One was CRO Partners, Inc., whose Managing Partner, Mike Kerans, handled the firm's work for Adloox.  (*Id.* ¶ 73 & Ex. 41).[2]  Kerans was sixty years old at the time.  (Rule 56.1 Reply ¶ 120).

---

[2]      Citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000), Plaintiffs argue that Defendant's evidence on various issues — including whether Adloox worked only with Mike Kerans at CRO Partners — must be disregarded because it comes from "interested witness[es]" whose testimony is "self-serving" and "bias[ed]."  (Docket No. 99 ("Pls.' Mem."), at 25; *see also* Docket No. 107 ("Def.'s Reply Mem."), at 11-12; *see also*, *e.g.*, Rule 56.1 Reply ¶¶ 6, 8, 13).  But *Reeves* says, and stands for, nothing of the sort.  *Reeves* merely directs a court to "disregard all evidence favorable to the moving party *that the jury is not required to believe*." *Reeves*, 530 U.S. at 151 (emphasis added).  As the Court explained, that means "the court should give credence to the evidence favoring the nonmovant," *id.*, where such evidence has been put forward.  Blanket citations to *Reeves* do not, by themselves, relieve Plaintiffs of producing admissible evidence that supports a reasonable inference of age discrimination.  Where evidence exists to support Plaintiffs' arguments, the Court will credit it, but it will not disregard the affidavits and declarations of Adloox's decisionmakers merely because they are interested parties.  *See Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (plaintiff cannot defeat summary judgment "on mere assertions that affidavits supporting the motion are not credible").

The other consultant, Forbes Marsh, was thirty-one at the time he was retained by Adloox. (TAC ¶ 93).  Adloox later hired Marsh as a full-time employee.  (*Id.* ¶¶ 126-28).

**B.  Andrea Bonner**

In July 2016 — approximately nine months after Downey was fired — Adloox hired Andrea Bonner to be "Vice President of Business Development."  (TAC ¶¶ 57-59; Rule 56.1 Reply ¶ 151).  Bonner — who was then fifty-three years old — had more than twenty years' experience in the advertising industry.  (TAC ¶¶ 6, 53).  Adloox was impressed by her experience and her connections in the industry.  (*Id.* ¶ 56; Rule 56.1 Reply ¶¶ 148-50).  Bonner began work on August 1, 2016.  (Rule 56.1 Reply ¶ 154).  During her first week, Bonner received training on Adloox's technology from Bellion.  Bellion was based in France, but was in New York City at the time.  (Docket No. 91 ("Bellion Decl."), at ¶ 1 & Ex. 11; Rule 56.1 Reply ¶ 157).  Shortly after Bonner was brought on, Adloox hired Ashley Smith as "Sales Director" at a slightly lower salary than Bonner.  (Rule 56.1 Reply ¶ 159).  Smith was thirty-five at the time. (TAC ¶ 65).  Along with Bonner and Smith, the only other U.S.-based Adloox employee was Sasha Sakhar, an "Account Manager" who earned substantially less than the other two.  (Rule 56.1 Reply ¶ 160; Docket No. 109-3, at 236).  Sakhar was twenty-nine years old.  (TAC ¶ 63).

At the end of August 2016, Ricci laid out goals for Bonner and Smith: "1 client meeting per day, minimum.  Starting now, I don't want to see you in the office."  (Ricci Decl. Ex. 52, at 2).  When Ricci traveled to New York in early October 2016, he was dismayed by the performance of the New York-based employees.  (*Id.* Ex. 66).  Of Bonner, he wrote that "[s]he is too slow. . . . and not doing what we need her to do, which is SELL."  (*Id.*).  He also criticized Smith and Sakhar for letting "personal issues" interfere with their work.  (*Id.*).  After an additional sales training, Ricci reiterated to Dufoi and Bellion that he was "[c]oncerned about Andrea [Bonner]" — that she was not having enough meetings with clients and that if she did

not meet a certain deadline, he was "going to have a very serious conversation with her." (*Id.* Exs. 59, 67). Ricci noted that Smith, in contrast to Bonner, had arranged several meetings and "[was] at least trying." (Ricci Decl. Ex. 67). In a series of e-mails, Ricci told Bonner to "increase the quantity of [her] meetings" with clients. (*Id.* Ex. 63; *see id.* Exs. 64-65). At various points in her employment, including the day she was fired, Ricci also asked Bonner for a list of her industry contacts. (Docket No. 101 ("Bonner Decl."), at ¶ 42; Docket No. 103, Ex. 2 ("Bonner Dep.") at 104-06, 112).

In November 2016, Ricci, Bellion, and Dufoi began considering closing the New York office. (Ricci Decl. ¶ 113; Bellion Decl. ¶ 70). An accounting firm hired by Adloox, however, recommended against closing the office on the ground that it might impair the company's value. (Ricci Decl. ¶¶ 114-15; Rule 56.1 Reply ¶¶ 187-89). The same month, Ricci suggested that Adloox "could save some money here and fire [Bonner]," contrasting her unfavorably ("0 meetings per week") with the less-well-paid Smith ("10 meetings a week"). (Ricci Decl. Ex. 70). On November 21 and 22, 2016, the three men decided, after an e-mail discussion, to fire Bonner. (*Id.* Ex. 74, at 1-4). On November 22, 2016, Ricci informed Bonner in person that she was terminated. (Rule 56.1 Reply ¶ 199).

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *see Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 420 (2d Cir. 2018), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (internal quotation marks omitted).  Moreover, courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often a central factual issue.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996).  Summary judgment, however, remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact."  *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997).  To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence."  *Anderson*, 477 U.S. at 252.  Just as in the non-discrimination context, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citation and internal quotation marks omitted).  For their part, courts evaluating the sufficiency of evidence on a motion for summary judgment must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999).

# DISCUSSION

Discrimination claims brought pursuant to the ADEA are examined under the well-established *McDonnell Douglas* burden-shifting test. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105-06 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that framework, the plaintiff bears the initial burden to establish a prima facie case of age discrimination. To establish such a prima facie case, a plaintiff must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107; *see also* 29 U.S.C. § 631(a) (limiting the application of the ADEA to individuals who are at least forty years old).

If the plaintiff establishes a prima facie case, the burden then shifts to the employer "to articulate 'some legitimate, nondiscriminatory reason for its action.'" *Gorzynski*, 596 F.3d at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802). Assuming the employer does so, the presumption of discrimination "drops from the picture," and "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). To satisfy that burden, the plaintiff in an ADEA case must "show that the employer's determination was in fact the result of discrimination" — more specifically, she "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." *Gorzynski*, 596 F.3d at 106 (internal quotation marks omitted) (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009)).

"The law governing ADEA claims has been held to be identical to that governing claims made under the [NYSHRL]," *Gorzynski*, 596 F.3d at 105 n.6, so the two may be in analyzed in tandem. Because the NYCHRL was amended specifically to have a broader reach than its

federal and state-level counterparts, *see Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Id.* Federal courts assessing NYCHRL claims must consider, among other things, "the totality of the circumstances," keeping in mind that "even a single comment may be actionable in the proper context" and that "summary judgment is still appropriate in NYCHRL cases, but only if the record establishes as a matter of law that a reasonable jury could not find the employer liable under any theory." *Id.* at 113.

## A. Downey's ADEA and NYSHRL Claims

The Court need not decide whether Downey has established a prima facie case of age discrimination because, even if he has, his ADEA and NYSHRL claims fail at the third step of the *McDonnell Douglas* analysis. For starters, Adloox has plainly articulated "a legitimate, nondiscriminatory business rationale for its actions." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Adloox contends that Downey was fired because of "poor performance" — namely, that he was simply not generating business or leads for Adloox in the United States. (Def.'s Mem. 15-18). And Adloox amply supports that contention with contemporaneous documentary evidence that Ricci was displeased with, among other things, the number of client meetings Downey was scheduling and the paucity of product tests that Downey was "winning." (*See* Ricci Decl. Exs. 19-21, 26, 28). That displeasure is manifest in e-mails between and among Adloox's three executives as early as September 24, 2015, only weeks after Downey began working at Adloox. (*See id.* Ex. 17). And those e-mails escalated in both frequency and urgency throughout October 2015 as the ad:tech conference approached. (*See id.* Exs. 19-21, 26, 28). Poor performance — in this case, the inability to generate sales or even sales leads — is the *ne plus ultra* of legitimate, non-discriminatory business rationales. *See, e.g.*, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93 (2d Cir. 2001), *as amended* (June 6,

2001) ("[Plaintiff's] . . . incapacity to bring in new business — especially in the face of an express requirement that he do so — [was a] legitimate business reason[] for his probation and termination.").

To survive summary judgment, therefore, Downey would need to proffer sufficient evidence from which a reasonable factfinder could conclude, by a preponderance of the evidence, that age was the "but-for" cause of Adloox's decision to fire him. *See Gorzynski*, 596 F.3d at 106. He fails to do so. Downey points, first, to comments made by Ricci and Dufoi as evidence of discriminatory animus. (Pls.' Mem. 2, 11-12). According to Downey, on two occasions outside the office, Ricci referred to him as an "old timer." In the first, Downey was lighting a cigarette in Times Square during "ad week" and Ricci turned to Bellion and said, "[L]ook at the old timer, smoking a cigarette." (Roth Decl. Ex. 1 ("Downey Dep."), at 80:15-17). On the second, Downey ordered a huge steak at dinner, and Ricci said to the table "look at the old timer" or called Downey's dish "[a]n old timer type of meal." (*Id.* at 79:15-18). Those two comments, however, are insufficient to create a triable issue of fact on the question of discrimination. Of central importance in determining whether a comment is probative of an employer's discriminatory intent is "the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). Only if "a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff" are the statements sufficient to prove discriminatory motive. *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004); *accord Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) ("The more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."), *abrogated on other grounds by Gross*, 557 U.S. at 177-78. Here, there was no nexus between Ricci's remarks and the decision to fire Downey:

They were made outside the office, in a non-business setting, and in no way related to Adloox's work or Downey's job. Indeed, of the steakhouse comment, Downey himself acknowledged that, during the dinner, "business was not being discussed. It was nothing more than levity, jocularity, three guys, whatever." (Downey Dep. 78:22-24). On their own, remarks so "remote and oblique . . . to the employer's adverse action" do not suffice to establish discrimination underpinning that adverse action, *Tomassi*, 478 F.3d at 111, "even if made by a decisionmaker," *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).[3]

Downey also points to Dufoi's statements that Adloox needed "young sharks" for its junior sales positions as evidence of age-based discrimination. If those statements had been made in reference to Downey, to a sales position comparable to Downey's, or to a general policy of looking only at younger candidates, they might well be probative of discriminatory intent on the part of Adloox. *See, e.g.*, *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1186-87 (2d Cir. 1992) (holding that a company's "special category of employees known as 'Young Tigers,'" which was "evaluative," was evidence of age discrimination); *Rose v. N.Y.C. Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (holding that a superintendent's statement that he would replace the plaintiff with someone "younger and cheaper" was direct evidence of discriminatory animus). But, as with Ricci's "old timer" remarks, Downey fails to establish, with admissible evidence, a nexus between Dufoi's statements and Adloox's decision to fire him — that is, that the statements were "related to the decision-making process" that culminated in *his* termination.

---

[3]     Downey submits in an affidavit that, at his interview, Ricci asked him his age and then expressed concern that he might not have sufficient "energy" to do the job. (Downey Decl. ¶ 22). But Downey made no mention of those comments during his deposition, even when he was specifically asked to identify "*all* the facts" predicating his belief that he was discriminated against on the basis of his age. (Downey Dep. 288:17-290:12 (emphasis added)). It is well established that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Thus, Downey's affidavit is insufficient to avoid summary judgment.

*Henry*, 616 F.3d at 150. The sales positions for which Dufoi (and Adloox) sought "young sharks" were paid less than, and subordinate to, Downey's position ("Vice President, North America"), and Downey himself was involved in interviewing and hiring for the positions. (Downey Dep. at 292-93; Roth Decl. Ex. 9; Downey Decl. Ex. 6).[4] Put simply, Downey points to no evidence, as he must, to connect Dufoi's "young sharks" e-mails about *others* with the company's decision to fire *him*. Downey argues that Dufoi "made each of these remarks in the context of deciding who [sic] to hire as Adloox employee salespeople," (Pls.' Mem. 9), but that argument misses the mark. The relevant context is *his* firing, not the hiring of *others*. *See, e.g.*, *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [a plaintiff's] own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [his] termination.").

Next, Downey argues at length that Adloox's stated reasons for firing him were pretextual. (Pls.' Mem. 16-20). To be sure, "[p]roof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *accord Bickerstaff*, 196 F.3d at 447 n.5. Yet, while Downey quarrels with Adloox's assessment of his performance (*see* Pls.' Mem. 16-20), he does not, because he could not, dispute that Adloox's principal executives sincerely *believed* that his performance was inadequate, as evidenced by the many e-mails, discussed, above, expressing concern that

---

[4]      Indeed, it bears noting that Dufoi's stated preference for "young sharks" seems to have been motivated, at least in part, by the bottom line. (*See, e.g.*, Roth Decl. Ex. 9 at 8 ("Most of the [proposed candidates] are too senior (some have a VP profile) and are then too expensive. I'm sure there are on the market less senior and more affordable profiles.")). As the Second Circuit has noted, "concern with the elevated costs of senior employees does not constitute age discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000).

Downey was not scheduling enough client meetings, not hustling for business, and not generating many business leads for someone of his industry experience and salary level. Those complaints were consistently voiced, contemporaneously documented, and made to other decisionmakers in the company (rather than, say, in an after-the-fact letter to Downey), and they accord with the reasons that Defendants proffer in this action for Downey's termination. *Cf., e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) (noting that "weaknesses, implausibilities, inconsistencies, . . . contradictions" and "discrepancies" in an employer's reasons may establish pretext).

Downey's rejoinder — that he did, in fact, meet the expectations for his position and otherwise performed adequately, (*see* Pls.' Mem. 16-20) — neither demonstrates that the Adloox principals' beliefs about his performance were insincere nor creates a triable issue of fact as to discrimination. At most, it shows that Downey disagrees with his employer's assessment of his performance, but that is "insufficient to establish discriminatory intent." *Ricks v. Conde Nast Publications, Inc.*, 6 F. App'x 74, 78 (2d Cir. 2001) (collecting cases). After all, an employer is allowed to "make bad business judgments and misjudge the work of employees as long as its evaluations and decisions are not made for prohibited discriminatory reasons" such as age. *Brown v. Soc'y for Seaman's Children*, 194 F. Supp. 2d 182, 191 (E.D.N.Y. 2002) (internal quotation marks omitted). So, even if Ricci, Bellion, and Dufoi were grievously mistaken about Downey's performance, that by itself would be insufficient to send the case to a jury on the issue of discrimination. *See, e.g.*, *Lue v. JPMorgan Chase & Co.*, No. 16-CV-3207 (AJN), 2018 WL 1583295, at *7 (S.D.N.Y. Mar. 27, 2018) (holding that the plaintiff's disagreements with her supervisors' evaluations were "as a matter of law . . . not evidence of discriminatory intent"); *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 29 (E.D.N.Y. 2015) ("A plaintiff cannot merely

rationalize, explain, or disagree with an employer's proffered non-discriminatory reasons to survive summary judgment.").

Downey's third and final argument is that Adloox's more favorable treatment of Forbes Marsh — the thirty-one-year-old employee who assumed a sales role after Downey was fired — creates an issue of material fact as to discriminatory motive. It does not. First, it is dubious to claim that Downey and Marsh were "similarly situated" in terms of their *roles* at Adloox. *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493-94 (2d Cir. 2010). But, even if they were, Downey's argument rests on the unsupported premise that Marsh performed worse than he did. Downey's only evidence that Marsh performed poorly is hearsay related by Andrea Bonner.[5] The Court may not consider that evidence on summary judgment. *See, e.g.*, *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013). It follows that Downey does not successfully controvert, as he must, the admissible evidence in the record that Marsh generated four "tests" in his first three months working for Adloox; that he closed a deal with a paying client; and that he was "a diligent worker who . . . work[ed] long hours and relentlessly pitch[ed] Adloox in the marketplace." (Ricci Decl. ¶¶ 76-81; *id.* Ex. 42; *see also* Bellion Decl. ¶ 56). Because Downey cannot show that he and Marsh "engaged in comparable conduct" or conduct of "comparable seriousness," *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) — here, failing to generate business — no reasonable factfinder could determine that Downey was fired because of his age based on Defendant's treatment of Marsh. In sum, the admissible evidence relied upon by Downey — even taken together — does not permit a reasonable conclusion that he was fired because of his

---

[5]     Specifically, Bonner stated in her deposition that Bellion told her Marsh was fired because "[h]e did not complete any sales." (Bonner Dep. at 259-60). In her declaration, she further stated that "Forbes [Marsh] . . . informed me in writing that he had only closed one piece of business . . . in his entire tenure at Adloox." (Bonner Decl. ¶ 16 & Ex. 2, at 4).

age.  By itself, that warrants summary judgment on his ADEA and NYSRHL claims.  *See*

*Gorzynski*, 596 F.3d at 106.

In addition, existing Second Circuit precedent weighs against finding an inference of

discriminatory animus here given that the decisionmakers who were involved in firing Downey

— Ricci, Dufoi, and Bellion — were the same people who had hired him only a few months

earlier, when he was not appreciably younger.  (*See* Rule 56.1 Reply ¶¶ 17, 104).  *See, e.g.*,

*Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (noting that the hiring and firing of a

plaintiff by the same actor within a short timeframe is a "highly relevant factor in adjudicating a

motion for summary judgment on an ADEA claim").  To be sure, the so-called "same-actor"

inference has been the subject of criticism in recent years.  *See* Victor D. Quintanilla & Cheryl R.

Kaiser, *The Same-Actor Inference of Nondiscrimination: Moral Credentialing and the*

*Psychological and Legal Licensing of Bias*, 104 Calif. L. Rev. 1 (2016).  But if the "same-actor"

inference is ever even somewhat persuasive, it is so here, as Downey was initially hired in

preference to two substantially younger candidates, one of whom was Marsh.  (Rule 56.1 Reply

¶ 17).  And Downey's contention that the "same actor" inference does not apply because Adloox

had a "collateral incentive" to hire him, *see Jetter v. Knothe Corp.*, 324 F.3d 73, 76 (2d Cir.

2003) — namely, to plunder his Rolodex (*see* Pls.' Mem. 21-24) — is unsupported by the record.

Adloox's efforts to get Downey's list of contacts before firing him could certainly be described

as unseemly.  But the record does not support the conclusion that its "incentive" in hiring him

was merely to obtain his contact list.  (*See* Rule 56.1 Reply ¶¶ 28, 55 (describing enthusiasm

about Downey and his hiring)).  And unseemly behavior alone does not give rise to an age

discrimination claim.  *See, e.g.*, *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998) ("[T]he

ADEA does not make employers liable for doing stupid or even wicked things; it makes them

liable for discriminating, for firing people on account of their age.").

For all the foregoing reasons, Adloox is entitled to summary judgment on Downey's ADEA and NYSHRL claims.

**B. Bonner's ADEA and NYSHRL Claims**

The Court turns, then, to Bonner's ADEA and NYSHRL claims.[6]  Assuming *arguendo* that she too has established a prima facie case of age discrimination, Adloox proffers a legitimate, non-discriminatory reason for her termination as well — namely, that it fired her for "objective performance reasons," specifically for her failure to schedule enough meetings with clients and to generate sales of Adloox's product.  (Ricci Decl. at ¶¶ 116-124).  As with Downey, and as described above, Adloox substantiates this argument with extensive contemporaneous documentation of Ricci's displeasure with Bonner's performance, Ricci's concern about her sales acumen, and his unfavorable opinion of her performance relative to Ashley Smith.

Like Downey, Bonner cannot satisfy her burden at the third stage of the *McDonnell Douglas* analysis by pointing to "sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but' for' cause of [Adloox's] decision to fire her."  *Gorzynski*, 596 F.3d at 107.  In an effort to satisfy that burden, she too gestures to Dufoi's "young sharks" remarks.  (Pls.' Mem. 10).  As explained above, however, those comments were too "remote" and "oblique" from the decision to fire *Downey* — during whose tenure they were made — to permit a reasonable inference of discrimination.  *See Tomassi*, 47 8F.3d at 115.  *A fortiori*, they are even less probative with respect to *Bonner*'s firing, which occurred over a year later and was wholly unrelated to Adloox's hiring criteria for a previous generation of sales associates.  *See Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487

---

[6]     In the Third Amended Complaint, Bonner alleges not only claims of discrimination, but also claims of retaliation.  (TAC ¶¶ 146-62).  But the parties stipulated to striking those claims (Docket No. 44), so there is no need to address them here.

(S.D.N.Y. 2017) (finding a remark that "was neither made close in time to the decision nor in relation to the specific employment decision" insufficient to defeat summary judgment).

Bonner flags other comments, but they are either similarly divorced from the decision to fire her or are not probative of discriminatory intent. In one e-mail, for example, Ricci wrote of Smith that "[s]he's 35 and single." (Ricci Decl. Ex. 66). Read in context, however, it is plain that Ricci was parroting Smith's own statements in criticizing her for being distracted by "her personal issues," not articulating an age-based preference. *See Delaney*, 766 F.3d at 170 ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [Plaintiff's] own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [her] termination."). In that same e-mail, Ricci also commented that "[Bonner] is . . . [h]iding behind 'the girls need me as the mother' too much, and not doing what we need her to do, which is SELL." (*Id.*) That remark was evaluative, but even if it was "related to the decision-making process," *Henry*, 616 F.3d at 149, its content would not permit a "reasonable juror [to] . . . view the remark as discriminatory." *Id.* The term "mother" may, in some circumstances, be unsubtle code for "old." *See, e.g.*, *Vale v. City of New Haven*, 197 F. Supp. 3d 389, 400 (D. Conn. 2016) (holding that a supervisor describing the plaintiff as "motherly," in addition to calling her "grandma" and otherwise treating her harshly, precluded summary judgment on an ADEA claim). But where, as here, the remark is unaccompanied by any other evidence of discrimination and on its face does not convey age-based discriminatory animus against the plaintiff in relation to the employment decision, it is not enough. *See Iuorno v. Dupont Pharm. Co.*, 129 F. App'x 637, 642 (affirming a district court's award of summary judgment to defendant because a supervisor's remark that the plaintiff "could be [a coworker's] mother" was "without more . . . insufficient to support an inference of age discrimination"); *Pinkney v. EMI Music Pub.*, No. 02-CV-1944 (LMM), 2006

WL 2456815, at *2, *13 (S.D.N.Y. Aug. 22, 2006) (granting summary judgment on an ADEA claim where a supervisor had repeatedly called the plaintiff "'grandma' in a condescending manner" because the record showed that the plaintiff had been fired for "persistent work product deficiencies"), *aff'd*, 296 F. App'x 186 (2d Cir. 2008).

Bonner's other arguments blend together. According to Bonner, she outperformed Smith, a younger coworker with similar sales responsibilities, yet when Adloox made the decision to let go of one of its two sales employees, it fired her rather than Smith. To Bonner, this demonstrates both that (1) Adloox gave favorable treatment to similarly situated younger employees and (2) that its stated rationale for firing her — that she performed poorly and it chose to retain the better employee — was pretextual. (Pls.' Mem. 13-16, 20-21).[7] Upon closer review, however, Bonner's evidence is insufficient to create an issue of fact regarding pretext. It is true that Adloox executives occasionally criticized Smith's work (*see* Ricci Decl. Ex. 66; *see also* Docket No. 103, Ex. 16 ("Ashley [Smith] has nothing close to signing. . . . [I]f audits go live, it's from my work not hers."); *id.* Ex. 4 at 110-11 (Bellion describing a limited speaking role for Smith at a meeting)), and equally true that they complimented Bonner's in-person sales ability in early November 2016, the same month she was fired, (*see* Ricci Decl. Ex. 64). But those facts do not contradict the record evidence demonstrating that Ricci thought Smith was outperforming Bonner and that, as between the two, it would be preferable to keep Smith. In a November 16, 2016 e-mail directly comparing the two, Ricci wrote: "Ashley: 10 meetings a week, pushing

---

[7]     Plaintiffs actually compare Adloox's treatment of its "older workers" (Downey and Bonner) with its "younger employees" (Marsh, Smith, and Sasha Sakhar) writ large, and fail to separate out the relevant comparators for each Plaintiff. Case law makes clear, however, that disparate treatment is probative of discrimination only where employees inside and outside the protected class are "similarly situated." *See, e.g.*, *Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 339 (S.D.N.Y. 2001). Plaintiffs make no argument that Marsh or Sakhar was similarly situated to Bonner (*see* Pls.' Mem. 13-16), so the Court confines its analysis to Smith.

things closer to contract. She is busy, and it's good. She actually wants to do well. Andrea: 0 meetings per week. . . . Once [a client Bonner was pursuing] signs, we could save some money and fire her. . . . [S]he is contributing nothing." (Ricci Decl. Ex. 70; *see id.* Ex. 67). Ricci's declaration and deposition state that Smith was scheduling many more meetings than Bonner (Ricci Decl. ¶¶ 117-19; Ricci Dep. 152-53), and Bonner does not dispute this, conceding that she does not know how many client meetings Smith scheduled during their time together there. (Rule 56.1 Reply ¶ 192). Finally, Bonner fails to dispute that Ricci expected her to schedule five meetings per week and that she failed to do so in many weeks. (*Id.* ¶¶ 166-71).

All told, Bonner fails to gainsay Adloox's considerable body of evidence that it fired her for poor performance and a failure to meet its expectations — and fired her rather than Smith based on a sincere belief that Smith was outperforming her. *See Khan v. Abercrombie & Fitch, Inc.*, No. 01-CV-6163 (WHP), 2003 WL 22149527, at *6 (S.D.N.Y. Sept. 17, 2003) (granting summary judgment where the plaintiff's failure to meet performance goals was thoroughly supported in the record and her self-assessment of her performance could "not serve as a basis to establish satisfactory performance"); *Ponniah Das v. Our Lady of Mercy Med. Ctr.*, No. 00-CV-2574 (JSM), 2002 WL 826877, at *8 (S.D.N.Y. Apr. 30, 2002) (holding that the plaintiff failed to prove pretext where the employer "presented an extensive record of unsatisfactory job performance . . . [as] measured by the employer's criteria"). More specifically, she fails to adduce evidence that she performed well and that Adloox's reasons for firing her were therefore pretextual. Without evidence of pretext, there is no "triable issue as to whether her age was a 'but for' cause of her termination." *Gorzynski*, 596 F.3d at 106. And because Bonner has not brought forward sufficient evidence that she outperformed Smith, her argument that Adloox subjected her to "disparate treatment," (Pls.' Mem. 13), relative to Smith collapses as well. That is, Adloox's "decision[] to quickly fire" her "while retaining . . . younger employees" such as

Smith is not "clear evidence of discrimination." (*Id.* at 15-16). In this instance, the decision to fire her was prompted by Adloox's well-chronicled displeasure with Bonner's performance, both relative to Smith's and on its own. *Cf. Ricks v. Conde Nast Publ'ns, Inc.*, 6 F. App'x 74, 78 (2d Cir. 2001) (affirming the grant of summary judgment where the plaintiff had "offer[ed] no evidence that other employees made the [same] sorts of mistakes" and thus "failed to show that she was 'similarly situated'" to them).[8]

Finally, as it did with Downey, the "same actor" inference further erases any whiff of discrimination that Bonner succeeds in creating: She was fifty-three when Adloox hired her, and only four months older when Adloox fired her. Thus, even construing the admissible evidence in the most favorable light to Bonner, the Court concludes that no reasonable trier of fact could find that age was the but-for cause of her termination. *Cf., e.g.*, *Schnabel*, 232 F.3d at 91.

Adloox is therefore entitled to summary judgment on her claims under the ADEA and NYSHRL.

## C. Plaintiffs' NYCHRL Claims

In light of the foregoing, the Court declines to exercise supplemental jurisdiction over Plaintiffs' NYCHRL claims. When all of a plaintiff's federal-law claims are dismissed before trial, as here, a district court has discretion not to assert supplemental jurisdiction over any remaining state-law claims. *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018). In most such cases, "the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward

---

[8]     Bonner makes a passing argument that Adloox "favored" two younger employees over her when it sent them to Europe for training and company events. (Pls.' Mem. 14). Bonner makes no effort to connect this purported favoritism to the decision to fire her and, even construed in the light most favorable to her, it comes nowhere close to creating a jury issue regarding whether she was fired months later based on her age.

declining to exercise jurisdiction over the remaining state-law claims." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (internal quotation marks omitted). Judicial economy and convenience favored resolution of Plaintiffs' NYSHRL claims because "the substantive standards for liability under the [two] statutory schemes are coextensive." *Caesar v. Riverbay Corp.*, No. 15-CV-8911 (NRB), 2017 WL 6887597, at *12 (S.D.N.Y. Dec. 27, 2017). By contrast, those considerations favor letting the state courts address Plaintiffs' NYCHRL claims, which must be analyzed "separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109. That is, given the "the slow development of case law regarding the appropriate standard by which to evaluate NYCHRL claims at the summary judgment stage," *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 835 (S.D.N.Y. 2013), the wholly separate and independent inquiry the Court would need to undertake in this "evolv[ing]" area of law, *see id.* at 835 n.6, and the parties' disinclination or failure to separately and adequately brief the NYCHRL claims, the factors of convenience, comity, and judicial economy point in the other direction with regard to Plaintiffs' NYCHRL claims. *See Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010) (noting that a district court may permissibly "determine that [an] area of law would benefit from further development in the state courts and therefore dismiss the claim without prejudice to refiling in state court").[9]

---

[9]    The parties did not brief the question of whether the Court should exercise supplemental jurisdiction over Plaintiffs' NYCHRL claims in the event that it dismissed their federal claims. Nevertheless, the law is clear that the Court may decide that question *sua sponte* in this setting. *See Catzin*, 899 F.3d at 84 ("[A]n opportunity to be heard on whether to exercise supplemental jurisdiction may be inherent in the course of pre-trial proceedings such as those resolving motions . . . for summary judgment. In such situations, a district court need not provide a separate opportunity to be heard beyond the briefing and resolution of such motions.").

**CONCLUSION**

For the reasons stated above, Adloox's motion for summary judgment is GRANTED with respect to Plaintiffs' ADEA and NYSHRL claims.  Further, the Court declines to exercise supplemental jurisdiction over Plaintiffs' NYCHRL claims, so those claims are DISMISSED without prejudice to re-filing in state court.

The Clerk of Court is directed to terminate Docket No. 88 and to close the case.


SO ORDERED.

Dated: October 23, 2018
      New York, New York

_____
JESSE M. FURMAN
United States District Judge